UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BANK OF AMERICA, N.A., a
National banking association,

        Case No.: 2:15-cv-10617
        Hon. Mark A. Goldsmith
        Mag. Judge David R. Grand

        Plaintiff,

vs.

GREAT LAKES REALTY CORP., a
Michigan corporation, THUNDERBIRD LANES,
INC., a Michigan corporation, CLOVERLANES
BOWL, INC., a Michigan corporation, BARBARA
WACHSTEIN, and WESTMINSTER FINANCIAL
SERVICES, LTD., a Pennsylvania corporation,

        Defendants.

_____/

| | |
|---|---|
| PLUNKETT COONEY | HARVEY KRUSE, P.C., |
| DOUGLAS C. BERNSTEIN (P33833) | JAMES SUKKAR (P28658) |
| PATRICK LANNEN (P73031) | Attorney for Defendant Westminster |
| Attorneys for Plaintiff | Financial Services, Ltd. |
| 38505 Woodward Avenue, Suite 2000 | 1050 Wilshire Drive, Suite 320 |
| Bloomfield Hills, MI 48304 | Troy, MI 48084 |
| (248) 901-4000 | (248) 649-7800 |
| dbernstein@plunkettcooney.com | jsukkar@harveykruse.com |
| | |
| THAV, GROSS | SCHAFER & WEINER PLLC |
| DAVID J. BENNETT (P10690) | DANIEL J. WEINER (P32010) |
| Attorney for Defendants, Thunderbird | JASON L. WEINER (P74120) |
| Lanes, Cloverlanes Bowl, Great Lakes | Attorneys for Receiver, BL Consultants |
| Realty and Barbara Wachstein | 40950 Woodward Ave. Suite 100 |
| 30150 Telegraph Road, Suite 444 | Bloomfield Hills, MI 48304-5124 |
| Bingham Farms, MI 48025 | (248) 540-3340 |
| (248) 645-1700 | dweiner@schaferandweiner.com |
| dbennett@thavgross.com | jweiner@schaferandweiner.com |

HARVEY KRUSE
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

## ANSWER TO COMPLAINT BY DEFENDANT, WESTMINSTER FINANCIAL SERVICES, LTD.

NOW COMES Defendant, Westminster Financial Services, Ltd., by and through its attorneys, Harvey Kruse, P.C., and for its Answer to Plaintiff's Complaint, states as follows:

## COMMON ALLEGATIONS
## THE PARTIES

1.     No contest.

2.     No contest.

3.     No contest.

4.     No contest.

5.     No contest.

6.     Admit.

## JURISDICTION AND VENUE

7.     Admit.

8.     Admit.

## THE LOAN AND FORBEARANCE DOCUMENTS

9.     Admit.

10.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 10, leaving Plaintiff to its proofs.

HARVEY KRUSE
ATTORNEYS & COUNSELORS A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526 248-649-7800

11.     This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 11, leaving Plaintiff to its proofs.

12.     This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 12, leaving Plaintiff to its proofs.

13.     This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13, leaving Plaintiff to its proofs.

14.     This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 14, leaving Plaintiff to its proofs.

15.     This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 15, leaving Plaintiff to its proofs.

16.     This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 16, leaving Plaintiff to its proofs.

HARVEY KRUSE
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

17.     This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 17, leaving Plaintiff to its proofs.

18.     This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 18, leaving Plaintiff to its proofs.

19.     This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 19, leaving Plaintiff to its proofs.

## **THE DEFAULTS**

20.     This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 20, leaving Plaintiff to its proofs.

21.     This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 21, leaving Plaintiff to its proofs.

22.     This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 22, leaving Plaintiff to its proofs.

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526    248-649-7800

23.   This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 23, leaving Plaintiff to its proofs.

## COUNT I - BREACH OF THE REPLACEMENT NOTE

24.   Defendant incorporates by reference its answer set forth above as though fully set forth herein.

25.   This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 25, leaving Plaintiff to its proofs.

26.   This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 26, leaving Plaintiff to its proofs.

WHEREFORE, Defendant prays for a judgment of no cause for action together with costs and attorney fees so wrongfully sustained.

## COUNT II – BREACH OF GUARANTIES

27.   Defendant incorporates by reference its answer set forth above as though fully set forth herein.

28.   This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 28, leaving Plaintiff to its proofs.

29.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 29, leaving Plaintiff to its proofs.

30.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 30, leaving Plaintiff to its proofs.

31.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 31, leaving Plaintiff to its proofs.

32.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 32, leaving Plaintiff to its proofs.

WHEREFORE, Defendant prays for a judgment of no cause for action together with costs and attorney fees so wrongfully sustained.

## COUNT III – JUDICIAL FORECLOSURE

33.    Defendant incorporates by reference its answer set forth above as though fully set forth herein.

34.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 34, leaving Plaintiff to its proofs.

HARVEY KRUSE
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

35.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 35, leaving Plaintiff to its proofs.

36.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 36, leaving Plaintiff to its proofs.

37.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 37, leaving Plaintiff to its proofs.

38.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 38, leaving Plaintiff to its proofs.

39.    Defendant admits that it maintains a lien upon the property described by the Plaintiff as the "mortgaged property," pursuant to a mortgage dated July 25, 2013, recorded by the Wayne County Register of Deeds on August 8, 2013 and Liber 50986, P 63.

40.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 40, leaving Plaintiff to its proofs.

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

WHEREFORE, Defendant prays for a judgment of no cause for action together with costs and attorney fees so wrongfully sustained.

## COUNT IV – CLAIM AND DELIVERY

41.    Defendant incorporates by reference its answer set forth above as though fully set forth herein.

42.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 42, leaving Plaintiff to its proofs.

43.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 43, leaving Plaintiff to its proofs.

44.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 44, leaving Plaintiff to its proofs.

45.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 45, leaving Plaintiff to its proofs.

46.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 46, leaving Plaintiff to its proofs.

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526    248-649-7800

WHEREFORE, Defendant prays for a judgment of no cause for action together with costs and attorney fees so wrongfully sustained.

## COUNT V – APPOINTMENT OF RECEIVER

47.    Defendant incorporates by reference its answer set forth above as though fully set forth herein.

48.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 48, leaving Plaintiff to its proofs.

49.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 49, leaving Plaintiff to its proofs.

50.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 50, leaving Plaintiff to its proofs.

51.    This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 51, leaving Plaintiff to its proofs.

WHEREFORE, Defendant prays for a judgment of no cause for action together with costs and attorney fees so wrongfully sustained.

HARVEY KRUSE
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

Respectfully submitted,
HARVEY KRUSE, P.C.

By: /s/ James Sukkar
JAMES SUKKAR (P28658)
Attorney for Defendant
Westminster Financial
Services, Ltd.
1050 Wilshire Dr., Ste. 320
Troy, MI 48084-1526
(248) 649-7800

Dated:  July 1, 2015

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BANK OF AMERICA, N.A., a
National banking association,

            Case No.: 2:15-cv-10617
            Hon. Mark A. Goldsmith

       Plaintiff,            Mag. Judge David R. Grand

vs.

GREAT LAKES REALTY CORP., a
Michigan corporation, THUNDERBIRD LANES,
INC., a Michigan corporation, CLOVERLANES
BOWL, INC., a Michigan corporation, BARBARA
WACHSTEIN, and WESTMINSTER FINANCIAL
SERVICES, LTD., a Pennsylvania corporation,

       Defendants.

_____/

| | |
|---|---|
| PLUNKETT COONEY | HARVEY KRUSE, P.C., |
| DOUGLAS C. BERNSTEIN (P33833) | JAMES SUKKAR (P28658) |
| PATRICK LANNEN (P73031) | Attorney for Defendant Westminster |
| Attorneys for Plaintiff | Financial Services, Ltd. |
| 38505 Woodward Avenue, Suite 2000 | 1050 Wilshire Drive, Suite 320 |
| Bloomfield Hills, MI 48304 | Troy, MI 48084 |
| (248) 901-4000 | (248) 649-7800 |
| dbernstein@plunkettcooney.com | jsukkar@harveykruse.com |
| | |
| THAV, GROSS | SCHAFER & WEINER PLLC |
| DAVID J. BENNETT (P10690) | DANIEL J. WEINER (P32010) |
| Attorney for Defendants, Thunderbird | JASON L. WEINER (P74120) |
| Lanes, Cloverlanes Bowl, Great Lakes | Attorneys for Receiver, BL Consultants |
| Realty and Barbara Wachstein | 40950 Woodward Ave., Suite 100 |
| 30150 Telegraph Road, Suite 444 | Bloomfield Hills, MI 48304-5124 |
| Bingham Farms, MI 48025 | (248) 540-3340 |
| (248) 645-1700 | dweiner@schaferandweiner.com |
| dbennett@thavgross.com | jweiner@schaferandweiner.com |

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

## <u>DEFENDANT'S SPECIAL AND/OR AFFIRMATIVE DEFENSES</u>

NOW COMES Defendant, Westminster Financial Services, Ltd., by and through its attorneys, Harvey Kruse, P.C., and for its Affirmative and/or Special Defenses, states as follows:

1.     That Plaintiff has failed to state a claim upon which relief can be granted.

2.     That Plaintiff failed to perfect its security interest in the subject property.

3.     Defendant reserves the right to amend, alter and supplement these special and/or affirmative defenses as discovery continues.

<div style="border:1px solid black">

PROOF OF SERVICE

The Undersigned certifies that the forgoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on July 1, 2015.

☐ US Mail          ☐ Fax
☐ Hand Delivered   ☐ UPS
☐ Fed.Express      ☒ Efile

Signature /s/ Gabriella Graziano

</div>

Dated: July 1, 2015

Respectfully submitted,
HARVEY KRUSE, P.C.

By: /s/ James Sukkar
    JAMES SUKKAR (P28658)
    Attorney for Defendant
    Westminster Financial
    Services, Ltd.
    1050 Wilshire Dr., Ste. 320
    Troy, MI 48084-1526
    (248) 649-7800

*HARVEY KRUSE*
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BANK OF AMERICA, N.A., a
National banking association,

                  Plaintiff,

vs.

GREAT LAKES REALTY CORP., a
Michigan corporation, THUNDERBIRD LANES,
INC., a Michigan corporation, CLOVERLANES
BOWL, INC., a Michigan corporation, BARBARA
WACHSTEIN, and WESTMINSTER FINANCIAL
SERVICES, LTD., a Pennsylvania corporation,

                  Defendants,

and,

WESTMINSTER FINANCIAL
SERVICES, LTD., a Pennsylvania corporation,

                  Defendant/Cross-Plaintiff,

vs.

GREAT LAKES REALTY CORP., a
Michigan corporation, and BARBARA
WACHSTEIN, an individual,

                  Defendants/Cross-Defendants.

Case No.: 2:15-cv-10617
Hon. Mark A. Goldsmith
Mag. Judge David R. Grand

_____/

| | |
|---|---|
| PLUNKETT COONEY | HARVEY KRUSE, P.C., |
| DOUGLAS C. BERNSTEIN (P33833) | JAMES SUKKAR (P28658) |
| PATRICK LANNEN (P73031) | Attorney for Defendant/Cross-Plaintiff |
| Attorneys for Plaintiff | Westminster Financial Services, Ltd. |
| 38505 Woodward Avenue, Suite 2000 | 1050 Wilshire Drive, Suite 320 |
| Bloomfield Hills, MI 48304 | Troy, MI 48084 |
| (248) 901-4000 | (248) 649-7800 |
| dbernstein@plunkettcooney.com | jsukkar@harveykruse.com |

HARVEY KRUSE
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

THAV, GROSS
DAVID J. BENNETT (P10690)
Attorney for Defendants, Thunderbird
Lanes, Cloverlanes Bowl, Great Lakes
Realty and Barbara Wachstein
30150 Telegraph Road, Suite 444
Bingham Farms, MI 48025
(248) 645-1700
dbennett@thavgross.com

SCHAFER & WEINER PLLC
DANIEL J. WEINER (P32010)
JASON L. WEINER (P74120)
Attorneys for Receiver, BL Consultants
40950 Woodward Ave., Suite 100
Bloomfield Hills, MI 48304-5124
(248) 540-3340
dweiner@schaferandweiner.com
jweiner@schaferandweiner.com

HARVEY KRUSE
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

## CROSS-COMPLAINT BY WESTMINSTER FINANCIAL SERVICES, LTD.

NOW COMES Defendant/Cross Plaintiff, Westminster Financial Services, Ltd., by and through its attorneys, Harvey Kruse, P.C., and for its Cross-Complaint against Cross-Defendants, Great Lakes Realty Corp. and Barbara Wachstein, states as follows:

## COMMON ALLEGATIONS

1.     That primary Plaintiff, Bank of America, has brought suit against Defendants/Cross-Defendants, Great Lakes Realty Corp. and Barbara Wachstein for, among other things, judicial foreclosure as against Great Lakes Realty Corp. and recovery under a personal guaranty as against Barbara Wachstein arising out of a certain promissory note (Exhibit 1 to the primary Plaintiff's Complaint), a certain guaranty  (Exhibit 4 to the primary Plaintiff's Complaint), and a certain commercial mortgage (Exhibit 6 to the primary Plaintiff's Complaint).

2.     That the primary Plaintiff has named Cross-Plaintiff, Westminster Financial Services, Ltd., as a junior mortgage holder and has attached a true copy

2

of the mortgage between Westminster Financial Services, Ltd. (mortgagee) and Great Lakes Realty Corp. (mortgagor) as Exhibit 13 to the primary Plaintiff's Complaint.

3.     That Cross-Defendant, Great Lakes Realty Corp. entered into a promissory note dated July 25, 2013 with Cross-Plaintiff Westminster Financial Services, Ltd. having a maturity date of February 1, 2017 in the principal amount of $97,692.00 (copy attached as **Exhibit A**).

4.     That Cross-Defendant, Barbara Wachstein, entered into a commercial guaranty of the subject note (**Exhibit A**) in favor of Cross-Plaintiff, Westminster Financial Services, Ltd., on or about July 30, 2013, wherein for good and valuable consideration, Barbara Wachstein, as guarantor:

> Absolutely and unconditionally guarantees full and punctual payment and satisfaction of the indebtedness of Borrower (Great Lakes Realty Corp.) to Lender (Westminster Financial Services, Ltd.) and the performance and discharge of all of Borrower's obligations under the Note and the related documents. (Commercial Guaranty attached as **Exhibit B**).

## JURISDICTION AND VENUE

5.     Jurisdiction of this court is proper, pursuant to 28 USC §1332 and FRCP 13(2)(g).

6.     Venue is proper in this court, pursuant to 28 USC §1391(a)(2).

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

## COUNT I – BREACH OF NOTE AGREEMENT

7.      Cross-Plaintiff, Westminster Financial Services, Ltd. incorporates by reference Paragraphs 1 through 6 set forth above as though fully set forth herein.

8.      Cross-Defendant, Great Lakes Realty Corp., breached the subject Note Agreement (**Exhibit A**) by failing to make the requisite payments, by discontinuing payments on or about April 1, 2015, leaving a balance, together with accrued interest and late fees in the amount of $58,915.66.

9.      Cross-Defendant, Great Lakes Realty Corp., is in default whereupon, pursuant to the terms of the Note (**Exhibit A**), the balance of the Note is due and owing, together with interest and costs.

WHEREFORE, Cross-Plaintiff, Westminster Financial Services, Ltd., prays for a judgment as against Cross-Defendant, Great Lakes Realty Corp., in the amount of $58,915.66, together with costs and attorney fees incurred and interest as provided by statue.

## COUNT II – BREACH OF GUARANTY

10.     Cross-Plaintiff, Westminster Financial Services, Ltd., incorporates by reference Paragraphs 1 through 9 set forth above as though fully set forth herein.

11.     Cross-Defendant, Barbara Wachstein, guaranteed payment and performance of the subject Note, pursuant to the Commercial Guaranty Agreement, attached as **Exhibit B**.

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

12.     Cross-Defendant, Great Lakes Realty Corp., is in default of the subject loan agreement.

13.     As a result of Cross-Defendant, Great Lakes Realty Corp.'s default, Cross-Defendant, Westminster Financial Services, Ltd., is entitled to enforce the commercial guaranty agreed upon by Cross-Defendant, Barbara Wachstein.

14.     Pursuant to the Commercial Guaranty Agreement (**Exhibit B**), there is now due and owing from Barbara Wachstein the sum of $58,915.66, together with costs and attorney fees.

WHEREFORE, Cross-Plaintiff, Westminster Financial Services, Ltd., prays for a judgment against Guarantor, Barbara Wachstein, in the amount of $58,915.66, together with costs and attorney fees incurred and interest as provided by statute.

## COUNT III – JUDICIAL FORECLOSURE

15.     Cross-Plaintiff, Westminster Financial Services, Ltd., incorporates by reference Paragraphs 1 through 14 set forth above as though fully set forth herein.

16.     That on July 25, 2013, Cross-Defendant, Great Lakes Realty Corp. entered into a mortgage with Cross-Plaintiff, Westminster Financial Services, Ltd., copy attached as **Exhibit C**.

17.     The legal description of the mortgaged property is as follows:

Part of the Southwest ¼ of Section 24, Town 1 South, Range 9 East, Michigan, described as follows: Beginning at a point on the South line of proposed MAR-GIT SUBDIVISION distant South 89 degrees 31

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS     A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526   248-649-7800

minutes 28 second East 1319.93 feet along East and West line and South 0 degrees 1 minute 38 seconds West 2231.05 feet from West ¼ corner of said section and proceed thence South 89 degrees 31 minutes 44 seconds East 846.00 feet: thence South 0 degrees 1 minute 38 seconds West 402.00 feet: thence North 89 degrees 31 minutes 44 seconds West 846.00 feet along South line of Section 24: thence North 0 degrees 1 minute 38 seconds East 402.00 feet to the point of beginning, excepting the South 117.75 feet on the West line and the South 115.90 feet on the East line thereof for road.

18.    Cross-Defendant, Great Lakes Realty Corp., is in default of the subject mortgage agreement.

19.    Upon the default of Cross-Defendant, Great Lakes Realty Corp., Cross-Plaintiff, Westminster Financial Services, Ltd., has the right to foreclose the mortgage by judicial foreclosure or by advertisement.

20.    As of June 25, 2015, the principal balance owed on the mortgage in favor of Cross-Plaintiff, Westminster Financial Services, Ltd., was $57,212.69, together with interest in the amount of $1,306.88 and late fees in the amount of $396.09 for a total amount due and owing of $58,915.66.

21.    No proceeding at law has been instituted by Westminster Financial Services, Ltd. to recover the subject indebtedness nor has any part of the indebtedness been collected or paid.

22.    Under the facts and circumstances herein, Cross-Plaintiff, Westminster Financial Services, Ltd., is entitled to foreclosure of the subject property.

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

WHEREFORE, Cross-Plaintiff, Westminster Financial Services, Ltd., prays that this honorable court:

a.  Determine the amounts owed to Westminster Financial Services, Ltd., pursuant to the Note and enter judgment against Great Lakes Realty Corp. and Barbara Wachstein, jointly and severally, in such amount in favor of Westminster Financial Services, Ltd., together with its expenses, reasonable attorney fees, interest and other costs; and,

b.  Upon the failure of Great Lakes Realty Corp. or Barbara Wachstein to pay such amounts to Cross-Plaintiff, Westminster Financial Services, Ltd., order that the mortgaged property be sold at public sale to the highest bidder, pursuant to the applicable statutes and Federal Rules of Civil Procedure;

c.  Provide that, subsequent to the foreclosure sale and the running of any period of limitations, upon the failure of Great Lakes Realty Corp. or Barbara Wachstein to pay the indebtedness determined by this court to be due to Cross-Plaintiff, Westminster Financial Services, Ltd., Great Lakes Realty Corp. and all parties claiming from or under it be foreclosed and barred from any and all equity of redemption and all claims of, in and to the mortgaged property; and,

d.  Order Great Lakes Realty Corp. and all parties claiming from or under it, or have otherwise come into possession of the mortgaged property,

HARVEY KRUSE
ATTORNEYS & COUNSELORS    A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526  248-649-7800

or any portion thereof during the pendency of this suit, to deliver and yield possession of the mortgaged property upon production or authentication of the deed to be executed, pursuant to such sale, and a certified copy of the order of judgment confirming the report of such sale, after such order of judgment has become absolute; and,

e. Order the net proceeds received from such public sale to be paid to Cross-Plaintiff, Westminster Financial Services, Ltd., in satisfaction or in partial satisfaction of the amount determined to be due and owing to Westminster Financial Services, Ltd.;

f. Enter a judgment in favor of Westminster Financial Services, Ltd. against Barbara Wachstein and Great Lakes Realty Corp. for the amount of deficiency following the public sale and report of sale; and,

g. Grant Cross-Plaintiff, Westminster Financial Services, Ltd., such other relief as may be deemed fair and equitable.

Respectfully submitted,
HARVEY KRUSE, P.C.

By: /s/ James Sukkar
   JAMES SUKKAR (P28658)
   Attorney for Westminster
   Financial Services, Ltd.
   1050 Wilshire Dr., Ste. 320
   Troy, MI 48084-1526
   (248) 649-7800

PROOF OF SERVICE
The Undersigned certifies that the forgoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on July 1, 2015.

☐ US Mail      ☐ Fax
☐ Hand Delivered   ☐ UPS
☐ Fed.Express     ☒ Efile

Signature /s/ Gabriella Graziano

Dated: July 1, 2015

**HARVEY KRUSE**
ATTORNEYS & COUNSELORS   A PROFESSIONAL CORPORATION
1050 WILSHIRE DRIVE, SUITE 320, TROY, MICHIGAN 48084-1526 248-649-7800

## <u>INDEX OF EXHIBITS</u>

A.    Promissory Note

B.    Commercial Guaranty

C.    Mortgage

# EXHIBIT A

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Call | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $97,692.00 | 07-25-2013 | 02-01-2017 | | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Great Lakes Realty Corp.
28900 Schoolcraft Road
Livonia, MI 48150

**Lender:** Westminster Financial Services, Ltd.
12 Grandview Circle
Canonsburg, PA 15317
(724) 514-8710

---

**Principal Amount: $97,692.00**    **Interest Rate: 7.250%**    **Date of Note: July 25, 2013**

**PROMISE TO PAY.** Great Lakes Realty Corp. ("Borrower") promises to pay to Westminster Financial Services, Ltd. ("Lender"), or order, in lawful money of the United States of America, the principal amount of Ninety-seven Thousand Six Hundred Ninety-two & 00/100 Dollars ($97,692.00), together with interest on the unpaid principal balance from August 1, 2013, at an interest rate of 7.250% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 42 payments of $2,640.72 each payment. Borrower's first payment is due September 1, 2013, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on February 1, 2017, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Westminster Financial Services, Ltd.; 12 Grandview Circle; Canonsburg, PA 15317.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note. If judgment is entered in connection with this Note, interest will continue to accrue after the date of judgment at the rate in effect at the time judgment is entered.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may, after giving such notices as required by applicable law, declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay

# PROMISSORY NOTE
## (Continued)

Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Pennsylvania.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Washington County, Commonwealth of Pennsylvania.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $15.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: a Mortgage dated July 25, 2013, to Lender on real property located in Wayne County, State of Michigan.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

GREAT LAKES REALTY CORP.

By: _Barbara B. Wachstein_ (Seal)
    Barbara B. Wachstein, President of Great Lakes
    Realty Corp.

# EXHIBIT B

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Great Lakes Realty Corp.
28900 Schoolcraft Road
Livonia, MI 48150

**Lender:** Westminster Financial Services, Ltd.
12 Grandview Circle
Canonsburg, PA 15317
(724) 514-8710

**Guarantor:** Barbara B. Wachstein
31100 Woodside Drive
Franklin, MI 48025

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Note and Related Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Note and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action,

## COMMERCIAL GUARANTY
### (Continued)

<div align="right">Page 2</div>

either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Washington County, Commonwealth of Pennsylvania.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Unless otherwise provided by applicable law, any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided by applicable law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

# COMMERCIAL GUARANTY
## (Continued)

<div align="right">Page 3</div>

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** The terms of this Guaranty shall be binding upon Guarantor, and upon Guarantor's heirs, personal representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code.

**Borrower.** The word "Borrower" means Great Lakes Realty Corp. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Barbara B. Wachstein, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means Westminster Financial Services, Ltd., its successors and assigns.

**Note.** The word "Note" means the promissory note dated July 25, 2013, in the original principal amount of $97,692.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED JULY 25, 2013.**

**THIS GUARANTY IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS GUARANTY IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**GUARANTOR:**

X _____ (Seal)
Barbara B. Wachstein

---

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH OF ~~PENNSYLVANIA~~ *Michigan*          )
                                                      ) SS
COUNTY OF *OAKLAND*                                   )

> **WANDA D DAVIDSON-MACK**
> NOTARY PUBLIC - STATE OF MICHIGAN
> COUNTY OF WAYNE
> My Commission Expires Nov. 19, 2017
> Acting in the County of *OAKLAND*

On this, the *30th* day of *July*, 20*13*, before me *Wanda D. Davidson-Mack*, the undersigned Notary Public, personally appeared Barbara B. Wachstein, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he or she executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
Notary Public in and for the State of *Michigan*

EXHIBIT C

2013 AUG -8 AM 8:56

Bernard J. Youngblood
Wayne County Register of Deeds
August 08, 2013 08:56 AM
Inst:2013364123 MTG Pages:14
Liber:50986 Page:63

# MORTGAGE

**RECORDATION REQUESTED BY:**
  Westminster Financial Services, Ltd.
  12 Grandview Circle
  Canonsburg, PA 15317

**WHEN RECORDED MAIL TO:**
  Westminster Financial Services, Ltd.
  12 Grandview Circle
  Canonsburg, PA 15317

**FOR RECORDER'S USE ONLY**

**THIS MORTGAGE** dated July 25, 2013, is made and executed between Great Lakes Realty Corp., whose address is 28900 Schoolcraft Road, Livonia, MI 48150 (referred to below as "Grantor") and Westminster Financial Services, Ltd., whose address is 12 Grandview Circle, Canonsburg, PA 15317 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages and warrants to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all rights to make divisions of the land that are exempt from the platting requirements of the Michigan Land Division Act, as it shall be amended; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Wayne County, State of Michigan:

  Part of the Southwest 1/4 of Section 24, Town 1 South, Range 9 East, Michigan, described as follows: Beginning at a point on the South line of proposed MAR-GIT SUBDIVISION distant South 89 degrees 31 minutes 28 seconds East 1319.93 feet along East and West line and South 0 degress 1 minute 38 seconds West 2231.05 feet from West 1/4 corner of said section and proceed thence South 89 degrees 31 minutes 44 seconds East 846.00 feet: thence South 0 degrees 1 minute 38 seconds West 402.00 feet: thence North 89 degrees 31 minutes 44 seconds West 846.00 feet along South line of Section 24: thence North 0 degrees 1 minute 38 seconds East 402.00 feet to the point of beginning, excepting the South 117.75 feet on the West line and the South 115.90 feet on the East line thereof for road.

The Real Property or its address is commonly known as 28900 Schoolcraft Road, Livonia, MI 48150. The Real Property tax identification number is 46-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-002.

MTG (14)

# MORTGAGE
## (Continued)

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B) PERFORMANCE OF ANY AND ALL COVENANTS AND OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE.  THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS AND COVENANTS:**

**PAYMENT AND PERFORMANCE.**  Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.**  Grantor and Lender agree that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.**  Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;  (2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

**Duty to Maintain.**  Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.**  Grantor represents and warrants to Lender that:  (1)  During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a)  neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage.  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person.  The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances.  Grantor hereby  (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and  (2)  agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.**  Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the

generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to (a) attend to Lender's interests, (b) inspect the Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage, (c) appraise the property, (d) investigate whether the property is a site or source of environmental contamination, or (e) remediate any environmental contamination. Without limiting the foregoing, Lender shall have the right to conduct and submit to appropriate governmental agencies a "baseline environmental assessment" of the property within the meaning of section 20101 of the Michigan Natural Resources and Environmental Protection Act, MCL section 324.20101, as it shall be amended from time to time. If, at the time of the appraisal, investigation, assessment, removal, or remediation, there shall have occurred and be continuing an Event of Default, then all costs and expenses of the appraisal, investigation, assessment, removal or remediation, shall be subject to the "Expenditures by Lender" section of this Mortgage. Grantor shall execute any consultant contract, waste manifest, notice, and other documents that Lender requests to enable Lender to take or conduct any action or activity contemplated by this paragraph, if Grantor is given a reasonable opportunity to negotiate the terms of the contract, manifest, notice, or other document.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before

**MORTGAGE**
**(Continued)**

enforcement against the Property.   Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.**   Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.**   Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.**   The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.**   Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender.   Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies.   Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require.   Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender.   Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice.   Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.**   Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty.   Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property.   If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender.   Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness.   If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.**   During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

## MORTGAGE
### (Continued)

**Grantor's Report on Insurance.**  Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing:  (1)  the name of the insurer;  (2) the risks insured;  (3)  the amount of the policy;  (4)  the property insured, the then current replacement value of such property, and the manner of determining that value; and   (5)  the expiration date of the policy.   Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.**  If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property.  All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor.  All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.  The Mortgage also will secure payment of these amounts.  Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.**  The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.**  Grantor warrants that:  (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.**  Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons.  In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.**  Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.**  All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.**  The following provisions concerning Existing Indebtedness are a part of this Mortgage:

**Existing Lien.**  The lien of this Mortgage securing the Indebtedness may be secondary and inferior to an existing lien.  Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

## MORTGAGE
### (Continued)

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place

**MORGAGE**
**(Continued)**

reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien. Such failure to make payment for taxes or insurance shall constitute waste at the time such items are due and payable.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien)

**MORTGAGE**
**(Continued)**

at any time and for any reason.

**Insolvency.**  The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness.  This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Existing Indebtedness.**  The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Breach of Other Agreement.**  Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.**  A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Right to Cure.**  If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default:  (1) cures the default within thirty (30) days; or  (2)  if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.**  Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.**  Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**UCC Remedies.**  With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.  Without limiting those rights and remedies, Lender may, at its option, either (a) enforce its security interest in the Personal Property under the Uniform Commercial Code or other applicable law or (b) include the Personal Property in any judicial or non-judicial foreclosure of this Mortgage.

**Collect Rents.**  Lender shall have the right, without notice to Grantor, to take possession of the Property

## MORTGAGE
### (Continued)

and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Any failure of Grantor to pay any taxes assessed against the Property or to pay any installment of those taxes or to pay any insurance premium upon any policy covering any property located upon the Property shall constitute waste and shall entitle Lender to the appointment by a court of competent jurisdiction of a receiver of the Property for the purpose of preventing the waste, except that no receiver may be appointed for any dwelling house or farm occupied by any owner of it as the owner's home or farm or for any store or other business property having an assessed valuation of $7,500 or less. Subject to the order of the court, the receiver may collect the rents and income from the Property and shall exercise control over the Property to the extent ordered by the court. A court may also appoint a receiver for the Property in any other circumstances permitted by law. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Nonjudicial Sale.** Lender may sell, release and convey the Real Property at public sale and sign and deliver to the purchasers at the sale good and sufficient deeds of conveyance, paying any surplus funds, after payment in full of the sums then due under this Mortgage and the expenses of the sale, including attorney fees as provided by law, to Grantor, all in accordance with applicable law.

**Warning. This Mortgage contains a power of sale, and, upon default, may be foreclosed by advertisement. In foreclosure by advertisement, no hearing is involved and the only notice required is to publish notice in a local newspaper and to post a copy of the notice on the Property.**

**Waiver.** If this Mortgage is foreclosed by advertisement, Grantor hereby voluntarily and knowingly waives all rights under the Constitution and laws of the State of Michigan and Constitution and laws of the United States to all notice and a hearing in connection with the above-mentioned foreclosure by advertisement, except as set forth in the Michigan statute providing for foreclosure by advertisement.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Will.** If Grantor remains in possession of the Property after Lender or the purchaser at a foreclosure sale of the Property become lawfully entitled to possession of the Property, the Grantor shall become a tenant at will of Lender or the purchaser of the Property and shall, at the option of the person lawfully entitled to possession, either (1) pay a reasonable rental for the use of the Property or (2) vacate the Property immediately upon the demand of the person lawfully entitled to possession.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any

## MORTGAGE
### (Continued)

part of the Property together or separately, in one sale or by separate sales and Grantor waives Grantor's rights under MCLA Section 600.3224 to have separate parcels sold separately and to have no more parcels than necessary sold. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness. After the date that payment of the Indebtedness secured by this Mortgage has been accelerated by Lender, acceptance by Lender of any amount(s) paid by or on behalf of Grantor which is less than the full unpaid balance of the Indebtedness, including without limitation all accrued interest, late charges and other amounts due Lender under this Mortgage, shall not be deemed a waiver of default or acceleration, but shall be credited toward the unpaid balance of the Indebtedness, unless Lender shall specifically agree in writing to waive any such default or acceleration or both.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover its reasonable attorneys' fees. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

## MORTGAGE
## (Continued)

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Mortgage will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Michigan. In all other respects, this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Mortgage is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the Commonwealth of Pennsylvania.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Washington County, Commonwealth of Pennsylvania.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Use of Pronouns.** Any term used to designate any of the parties in this Mortgage shall be deemed to include the respective heirs, estate representatives, successors, and assigns of the parties, and all

pronouns and relative words used in this Mortgage are intended to apply in the singular, plural, feminine or neuter forms as the context may require, to appropriately refer to the parties designated.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Michigan as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Great Lakes Realty Corp. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Mortgage.

**Grantor.** The word "Grantor" means Great Lakes Realty Corp..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in

## MORTGAGE
### (Continued)

this Mortgage.

**Lender.** The word "Lender" means Westminster Financial Services, Ltd., its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated July 25, 2013, **in the original principal amount of $97,692.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**GRANTOR COVENANTS AND AGREES TO THE PROVISIONS OF THIS MORTGAGE.**

**GRANTOR:**

**GREAT LAKES REALTY CORP.**

By: _____
    Barbara B. Wachstein, President of Great Lakes Realty Corp.

This Mortgage was prepared by:  Richard Buehler, Director of Commercial Lending
                                Westminster Financial Services, Ltd.
                                12 Grandview Circle
                                Canonsburg, PA 15317

**MORTGAGE**
**(Continued)**

Page 14

## CORPORATE ACKNOWLEDGMENT

STATE OF _Michigan_ )
) SS
COUNTY OF _OAKLAND_ )

> **WANDA D DAVIDSON-MACK**
> NOTARY PUBLIC - STATE OF MICHIGAN
> COUNTY OF WAYNE
> My Commission Expires Nov. 19, 2017
> Acting in the County of _OAKLAND_

On this _30th_ day of _July_, 20 _13_, before me, the undersigned Notary Public, personally appeared **Barbara B. Wachstein, President of Great Lakes Realty Corp.**, and known to me to be an authorized agent of the corporation that executed the Mortgage and acknowledged the Mortgage to be the free and voluntary act and deed of the corporation, by authority of its Bylaws or by resolution of its board of directors, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Mortgage and in fact executed the Mortgage on behalf of the corporation.

By _Wanda D Davidson-Mack_          My commission expires _Nov. 19, 2017_

Notary Public, State of _Michigan_, County of _WAYNE_

Acting in the County of _OAKLAND_

LASER PRO Lending, Ver. 13.2.0.016  Copr. Harland Financial Solutions, Inc. 1997, 2013.   All Rights Reserved.  - MI/PA  F:\WFS\CFI\LPL\G03.FC  TR-120  PR-1